insurance. Secondly, defendants claimed that even if they had examined the policies and observed the error at once on receipt, it would have been unavailing as the fire occurred before the mistake could have been corrected.

The issue thus raised was clearly one of fact, to wit: the negligence of defendants, and was for the jury.

Judgment affirmed.

---

## Higgins, Appellant, *v.* Higgins.

*Partnership—Purchase of real estate by partner—Partnership accounting.*
　Where a partnership is indebted to one of the partners, and the latter purchases real estate and pays for the same with money or assets withdrawn from the partnership by him on account of the firm's indebtedness to himself, and no objection is made at the time to such withdrawal, the other partners cannot subsequently claim that the partnership had an interest in the real estate thus bought.

Argued Oct. 23, 1906. Appeal, No. 47, Oct. T., 1906, by plaintiff, from decree of C. P. No. 2, Allegheny Co., April T., 1905, No. 199, dismissing bill in equity in case of Catherine Higgins, Administratrix of the Estate of Michael Higgins, v. Lawrence J. Higgins, Executor of the Estate of John P. Higgins, deceased, who survived Michael Higgins, late copartners under the firm name of Higgins & Son, and Lawrence J. Higgins, in his own right. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for a partnership accounting.

OVER, J., specially presiding, filed the following opinion:
　The prayers of this bill are for an accounting between the estates of Michael Higgins, deceased, and John P. Higgins, deceased, of the partnership which existed between them; that certain real estate, the title to which was in the name of John P. Higgins, deceased, and is now in Lawrence Higgins, be included in the accounting, as partnership property, and that Lawrence be restrained from disposing of the same.

Michael Higgins and his son, John P. Higgins, carried on the scrap iron business as equal partners in Allegheny City for some time prior to April, 1893, when they moved to and occupied premises in Pittsburg, purchased from J. P. Kohler for $8,000, the title being taken in the name of John P. Higgins. Kohler then owed the firm $5,000 which was credited on the purchase money, and the partnership business was continued on these premises until the death of Michael Higgins, February 9, 1901. On the 6th day of May following John P. Higgins made a settlement of the partnership business with Catherine Higgins, but the land purchased from Kohler was not included as part of the firm assets. John P. Higgins subsequently conveyed this land to Lawrence Higgins for a nominal consideration and also devised the same to him and appointed him executor, and having died on April 21, 1903, the will was duly probated and letters issued to Lawrence Higgins.

The material questions in dispute here are as to the averments in the seventh paragraph of the bill, that the purchase from Kohler was made with the firm assets for the benefit of the firm, and that John P. Higgins held the title in trust for it. The defendant denies these averments, and alleges that the first payment was made by John P. Higgins with money or assets withdrawn by him on account of the firm's indebtedness to him. He then proceeds to state in detail the amount invested by each of the partners, the amounts drawn by each; that John P. Higgins claimed the land as his own, and that Michael Higgins never made objections thereto, nor disputed his right; that the plaintiff and his heirs had full knowledge of the facts for many years prior to Michael Higgins' death.

It is contended that Lawrence Higgins could not have personal knowledge of the facts alleged in the answer; that it is not responsive for this reason, and also because the facts alleged are not responsive to the averments of the bill. The affidavit to the answer is made by Lawrence Higgins, acting in his own right and as executor of John P. Higgins, and in it he avers that he has personal knowledge of all the facts set forth in said answer, and " that all of said facts are true." Notwithstanding these averments, however, if it appears that the facts asserted by the defendant are such that he could not have had

personal knowledge of them, the answer is not responsive: Riegel v. American Life Insurance Company, 153 Pa. 134. Could Lawrence J. Higgins, then, not have personal knowledge of the facts alleged by him in his answer? He was the son of one of the members of the firm and the brother of the other, and it is highly probable that he would have information from both as to the condition of their accounts and the facts as to the purchase from Kohler, and his affidavit that he had personal knowledge, seems to be sufficient to make the answer responsive if the facts alleged are : Kane v. Fire Insurance Co., 199 Pa. 198.

In Eaton's Appeal, 66 Pa. 483, Mr. Justice SHARSWOOD says: " .... If a plaintiff state an act, transaction or contract as the foundation of his equity, the defendant has a right to state the whole of such act, transaction or contract as in truth it was. Otherwise a plaintiff by giving only part of a contract, if the defendant must admit that part, and cannot go on to describe truly all the parts of it, the grossest injustice might be done. The defendant must answer every material allegation in the bill whether specially interrogated thereto or not, and unless he states the act or contract fully, as it truly was, how can he conscientiously swear that the facts in his answer are true? Half a fact or half a contract is not the truth. Neither is it true if in truth the terms of a contract are different."

Tested by this rule, we think the averments in the seventh paragraph of the answer, denying the allegations of the seventh paragraph of the bill and alleging that the first payment in the purchase of the land in dispute was made by John P. Higgins with money or assets withdrawn by him on account of the firm's indebtedness to him, are responsive to the bill.

The plaintiff states a transaction as the foundation of his equity, and the defendant avers that the whole of the transaction was not stated ; that whilst it was true that the firm assets were used in making the purchase, they were withdrawn by John P. Higgins on account of the indebtedness of the firm to him, and, if so, they thereby became his individual property, and, as alleged by the respondent, no part of the consideration for the purchase of the property was paid out of the assets of the firm.

The next question for consideration is whether the evidence

in the case overcomes the answer. The only witnesses called by the plaintiff are Jacob P. Kohler and Mrs. Weaver. The former testified that when John P. Higgins purchased the property in dispute he said, " I want this deed made out in my name, and I don't want you to say anything about it." The latter, who is the niece of Mrs. Higgins, testified in regard to the property that " John and his father always spoke it that they bought it together in partnership." She also testified in regard to the deed that she heard John say to his father, " Father, I will make that all right. I did not do it to rob the girls or you, but I don't want Jim or Tom to get anything, because they are of no account," and that the father said " John, you make that right, or I will put you in the penitentiary." She does not fix the time that this conversation occurred accurately, but it seems to have been in 1897, four years prior to the death of Michael Higgins.

John P. Higgins may have requested Kohler not to say anything about the deed being made to him, to conceal the fact from the other members of the family, or from his father as well as them. If the latter were his purpose, and the conversation between him and his father related by Mrs. Weaver indicates it was, the inference is that his father did not know at the time of the purchase that John had withdrawn any of the assets of the firm on account of its indebtedness to him. But as he lived four years after he had obtained knowledge that the title was in John's name, as shown by Mrs. Weaver's testimony, without requiring John to make title to the firm, the presumption is that he was satisfied that his son should retain the land, and this circumstance corroborates the answer, as does also the fact that though the administratrix of Michael Higgins, and his next of kin, who are all sui juris, must have known that the title to the property was in John P. Higgins' name, and that the firm had used it in conducting its business, yet, in 1901, she, acting under advice of her counsel, settled the partnership affairs with John P. Higgins, without any assertion on her or their part that the land was part of the firm's assets, and they receipted in full for their distributive shares in their father's estate. Our conclusion, therefore, is that the evidence does not overcome the answer.

There is room for serious doubts as to whether the conclu-

sions reached in this case are correct, but the plaintiff's case must be clear to entitle her to relief, and if injustice be done it is due to the laches of Michael Higgins and his next of kin.

### FINDINGS OF FACT.

1. For several years prior to February 9, 1901, the said Michael Higgins, and his son, the said John P. Higgins, were associated as copartners under the firm name of Higgins & Son, in the business of dealers in metal and scrap iron, in the cities of Allegheny and Pittsburg in said county, under a parol agreement whereby each of said copartners was to have an equal interest in the said business and to share equally in the losses and profits thereof.

2. Said copartnership continued from its inception until February 9, 1901, when it was dissolved by the death of said Michael Higgins, which occurred upon said last mentioned date.

3. That John P. Higgins, about April 3, 1893, purchased from Jacob P. Kohler the land mentioned in paragraph seventh of the plaintiff's bill, taking the title in his own name.

4. That Kohler was then indebted to the firm of Higgins & Son in the sum of $5,000, and John P. Higgins paid $5,000 of the purchase money for said land by canceling Kohler's indebtedness to the firm and by assuming the payment of a mortgage on the land for $3,000, which he paid after the death of Michael Higgins, and that said $5,000 was withdrawn from the firm's assets by John P. Higgins on account of the firm's indebtedness to him.

5. That an inventory and appraisement of all the assets of Higgins & Son was made on February 23, 1901, and a full settlement of the partnership affairs was made between John P. Higgins, surviving partner, and Catherine Higgins, administratrix of Michael Higgins, deceased, and she received for the interest of the decedent therein, $8,614.74. That she then knew the title to the land described in the seventh paragraph of the bill was in John P. Higgins, and that the firm had used it in conducting its business, but no assertion was then made that it was partnership assets, and it was not included in said settlement.

6. That John P. Higgins was the active partner of the firm, and no regular books of account were kept.

CONCLUSIONS OF LAW.

The answer, wherein it denies that any part of the consideration paid for the real estate in dispute was paid out of the assets of the firm, and avers that the first payment was made by John P. Higgins with money or assets withdrawn by him on account of the firm's indebtedness to him, is responsive to the bill, and is not overcome by the evidence. The withdrawal by John P. Higgins of firm assets on account of the firm's indebtedness to him made them his individual property, and although the assets so withdrawn were applied by him to the purchase of the land in dispute, yet, as they belonged to him, no part of the purchase money was paid by the firm, and it had no interest in the purchase. The bill must therefore be dismissed. Let a decree be drawn accordingly.

*Error assigned* was decree dismissing the bill.

*A. B. Reid*, with him *H. F. McGrady* and *A. V. D. Watterson*, for appellant.

*Thomas Herriott*, with him *John L. Ralph* and *O. P. Robertson*, for appellee.

PER CURIAM, January 7, 1907:

Decree affirmed on the findings of fact, conclusions of law and opinion of the court below.

---

# Maiorano, Appellant, *v.* Baltimore & Ohio Railroad Company.

*Constitutional law—Treaties—Construction of treaties.*

When rights conferred by a treaty are of such a nature as to be enforced in a court of justice, the court resorts to the treaty for the rule of decision as it would to a legislative enactment.

In construing a treaty the general rule obtains that the court is to be guided by the intention of the parties, and if the words clearly express the meaning and intention, no other means of interpretation can be employed.

The provision in the treaty between the United States and the Kingdom